IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHANTELA STACKHOUSE, Individually and as Independent Administrator of the Estate of C.M., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA <br><br> Defendant. | Case No. 3:22-CV-00246-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This case arises out of a tragic miscarriage that ended a pregnancy. Plaintiff Shantela Stackhouse, individually and as independent administrator of the estate of C.M., brought this action for damages against several institutional and individual healthcare providers who treated her in connection with her pregnancy. Plaintiff named Southern Illinois Healthcare Foundation, Inc., Dr. Geoffrey Lowell Turner, and Dr. Jamie L. Hardman (collectively the "Federal Defendants") among others, as Defendants in this action. On March 28, 2022, the Court dismissed the Federal Defendants with prejudice and substituted the United States of America in their stead. (Doc. 21).

The United States is now the only remaining Defendant in the case.[1] Plaintiff's Third Amended Complaint, the operative complaint here, asserts three claims for relief: medical malpractice on behalf of Shantela Stackhouse (Count I); wrongful death on behalf

---

[1] The two other Defendants, Alton Memorial Hospital and Diane Lahey, RN, settled Plaintiff's claims against them and were voluntarily dismissed with prejudice. (Docs. 81, 83, 85, and 95).

of the estate of C.M. (Count II); and a survival action under the Illinois Survival Act, 755 ILCS 5/27-6, on behalf of the estate of C.M. (Count III). (Doc. 96). The United States moves for judgment on the pleadings as to Count III, arguing that an unborn fetus cannot accrue a cause of action under the Survival Act. (Doc. 100).

## BACKGROUND

The Court accepts the facts alleged in Plaintiff's Third Amended Complaint as true. *Pisciotta v. Old Nat. Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007).

On July 23, 2019, at around 9:35 a.m., Plaintiff presented at Alton Memorial Hospital ("Alton") complaining of cramps and contractions. *Id.* ¶ 18. At the time, she was 39 weeks and three days pregnant with C.M., an "unborn, full term and viable baby boy." *Id.* A physical exam, vital sign reading, and laboratory testing revealed Plaintiff's elevated blood pressure and protein in her urine. *Id.* ¶ 19. The fetal heart rate monitor did not provide reliable information concerning C.M.'s state. *Id.* At 11:50 a.m., Plaintiff was discharged from Alton. *Id.* ¶ 22. Before her discharge, there were "no contraindications for delivery" of C.M. *Id.* ¶ 23.

Later that day at 3:31 p.m., Plaintiff presented at Gateway Regional Medical Center ("Gateway") via EMS. *Id.* ¶ 24. Her symptoms had gotten noticeably worse as she was experiencing low blood pressure, vomiting, and abdominal pain. *Id.* The medical staff at Gateway was unable to get fetal heart tones from C.M., and Plaintiff was found to have suffered a complete placental abruption. *Id.* As a result, Plaintiff was taken for an emergency cesarian section. *Id.*

C.M. was delivered at 3:47 p.m. *Id.* ¶ 25. The staff began performing CPR within

minutes, but C.M. was pronounced dead at 4:16 p.m. *Id.* ¶¶ 26, 27. Plaintiff, meanwhile, was treated for hemorrhaging related to the placental abruption. *Id.* ¶ 28.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Pleadings "include the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

"The only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same." *Federated Mut. Ins. Co. v. Coyle Mechanical Supply, Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). A motion for judgment on the pleadings may not be granted "unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position." *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020). Thus, even with all facts and inferences viewed in the light most favorable to the nonmoving party, *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993), the moving party must demonstrate that "there are no material issues of fact to be resolved." *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452.

## DISCUSSION

Count III advances a cause of action sounding in negligence under the Illinois Survival Act. "The Survival Act does not create a statutory cause of action. It merely allows a representative of the decedent to maintain those statutory or common law actions which had already accrued to the decedent before he died." *Advincula v. United*

*Blood Srvs.*, 678 N.E.2d 1009, 1029 (Ill. 1996). The question here is whether C.M.'s representative may bring a survival action on C.M.'s behalf even though he was stillborn.

The United States relies on the Illinois Supreme Court's decision in *Brucker v. Mercola*, 886 N.E.2d 306 (Ill. 2007), to support its contention that a person cannot accrue a cause of action until they are born. In *Brucker*, Dr. Mercola, the defendant, prescribed Anna Brucker, a pregnant woman, L-glutamine for her allergies and sold it to her directly. *Id.* at 308-09. Dr. Mercola's employee mistakenly filled the prescription with selenium, which caused Ms. Brucker to become very ill when she took it. *Id.* at 309. The plaintiffs filed suit and included a claim on behalf of Anna's son Robert, who was born a few months later and was allegedly "poisoned *in utero*" when Anna ingested the selenium. *Id.* A critical question in the case was whether the applicable statute of repose was tolled until Robert's birth. *Id.* at 326. "[A] cause of action accrues when facts exist that authorize the bringing of a cause of action." *Id.* at 329. And with respect to injuries sustained *in utero*, the court observed that it and other courts "have generally held that a cause of action for prenatal injuries cannot be maintained until birth." *Id.* at 330. "Thus, when a fetus is injured, the occurrence of the injury and the accrual of the cause of action take place at different times. Because no suit may be maintained until birth, that is the time at which facts exist that authorize the bringing of a cause of action and that the claim has come into being as an enforceable claim or right." *Id.* The court concluded that "because liability does not attach until birth and because there is no right to bring a cause of action until birth, the limitations period cannot begin to run until birth." *Id.* at 333. This also meant that the repose period "cannot begin to run until the child is born." *Id.* at 334.

Plaintiff, for her part, argues that the Illinois Supreme Court would likely embrace a survival action on behalf of a stillborn child based on several cases predating *Brucker*. She cites *Amann v. Faidy*, 114 N.E.2d 412, 413 (Ill. 1953), where a pregnant woman was involved in a car accident that inflicted prenatal injuries on her baby. The baby was born alive but later died of those injuries. *Id.* The court framed the legal issue as "whether there can be recovery for the wrongful death of a child who was negligently injured *en ventre sa me re* and who, after his birth, died as a result of those injuries." *Id.* at 413 (italics added). The court surveyed the relevant authorities and found that several courts around the country had abandoned the "doctrine of nonliability," which was based on an "outmoded" view that a fetus has no "separate existence" from the mother. *Id.* at 417 (quoting *Woods v. Lancet*, 102 N.E.2d 691, 695 (N.Y. 1951)). The *Amann* court thus held that the "plaintiff, as administratrix of the estate of a viable child, who suffered prenatal injuries and was thereafter born alive, has a right of action against the defendant whose alleged negligence caused the injuries." *Id.* at 417-418.

Plaintiff also directs the Court's attention to *Chrisafogeorgis v. Brandenberg*, 304 N.E.2d 88 (Ill. 1973). There, the court allowed the father of a stillborn child to maintain an action for damages under the Illinois Wrongful Death Act (currently codified at 740 ILCS 180/1 *et seq.*) after the child's mother was involved in a car accident in her eighth month of pregnancy. *Id.* at 89. The court reasoned that permitting recovery for the death of a stillborn child was a "reasonable and natural" extension of *Amann* because "[t]he factual difference between the case there and the one here is the time of death, not the character of the injury." *Id.* at 91. Thus, the court embraced a cause of action for damages

on behalf of a stillborn child under the Wrongful Death Act, notwithstanding the fact that the child "did not survive delivery." *Id.*

With this authority in mind, it is apparent that Illinois has not embraced a survival action on behalf of an unborn child. If anything, the most recent case to discuss a related issue, *Brucker*, appears to reject such a claim. Plaintiff distinguishes *Brucker* on the basis that it did not concern the Survival Act and is thus inapposite. But *Brucker* is clear in its rejection of an unborn child's right to sue *before birth*, and it does not appear to limit its holding to specific legal theories. It is thus doubtful that Illinois recognizes a child's estate's ability to sue on the child's behalf in a survival action when the child was not born alive. Indeed, *Amann* limited recovery for the wrongful death of a child "who suffered prenatal injuries *and was thereafter born alive.*" *Amann*, 114 N.E.2d at 417-418 (emphasis added). And although *Chrisafogeorgis* extended *Amann*'s holding to children who are "stillborn," it did so in an action under the Wrongful Death Act, not in a survival action. This distinction is important because "[a] survival action allows for recovery of damages for injury sustained by the deceased up to the time of death; a wrongful death action covers the time after death and addresses the injury suffered by the next of kin due to the loss of the deceased rather than the injuries personally suffered by the deceased prior to death."[2] *Wyness v. Armstrong World Indus., Inc.*, 546 N.E.2d 568, 571 (Ill. 1989).

These authorities do not settle the exact issue presented here: whether the estate

---

[2] The United States' motion only targets the survival action in Count III, not the wrongful death claim in Count II. This narrow focus is not entirely surprising in light of *Chrisafogeorgis* and the Illinois Supreme Court's recognition that survival and wrongful death claims address fundamentally different injuries. *See Murphy v. Martin Oil Co.*, 308 N.E.2d 583, 587 (Ill. 1974) (examining distinction between claims under Survival Act and Wrongful Death Act).

of a stillborn child may bring a survival action for prenatal injuries to the child. All that is clear is that neither the Illinois Supreme Court, nor the state legislature, has authorized a survival action under such circumstances. This finding is consistent with an examination of the issues in the Central District of Illinois, which the Court finds instructive. *See Houskin v. Sinai Health Sys.*, No. 16 C 8645, 2018 WL 5884518 (C.D. Ill. Nov. 8, 2018) (rejecting survival claim because "[u]nder Illinois law, a person cannot accrue causes of action until birth."). So, the Court is left with Plaintiff's invitation to predict the existence of a cause of action without clear guidance from the Illinois Supreme Court.

The Court respectfully declines the invitation to create new law. "Federal courts are loathe to fiddle around with state law. Though district courts may try to determine how the state courts would rule on an unclear area of state law, district courts are encouraged to dismiss actions based on novel state law claims." *Insolia v. Phillip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000). Here, the question whether a stillborn child can accrue a cause of action under the Survival Act is both unsettled and fraught with sensitivities that reach well beyond the legal arena. That is all the more reason to avoid embracing Plaintiff's survival claim. "When given a choice between an interpretation of Illinois law which reasonably restricts liability, and one which greatly expands liability, [federal courts] should choose the narrower and more reasonable path (at least until the Illinois Supreme Court tells us differently)." *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994). That is what the Court will do here. The survival action on behalf of C.M.'s estate will be dismissed.

## CONCLUSION

For these reasons, the Court **GRANTS** the United States of America's Motion for Judgment on the Pleadings. (Doc. 100). Count III of Plaintiff's Third Amended Complaint is **DISMISSED with prejudice**.

## NEXT STEPS

The United States has filed a motion to exclude expert testimony from Dr. James Hocker, M.D. (Doc. 109) and a motion for partial summary judgment (Doc. 110). Dr. Hocker's testimony is offered in support of Count III, which has now been dismissed. The motion for partial summary judgment seeks dismissal of Count III on the basis that, without Dr. Hocker's expert testimony, it no longer presents a viable legal claim. The motion for partial summary judgment also seeks dismissal of all claims against Dr. Jamie L. Hardman, which Plaintiff appears to concede. (Doc. 115, p. 4). With Plaintiff's concession regarding Dr. Hardman and the dismissal of Count III, the motion to exclude Dr. Hocker and the motion for partial summary judgment appear to be moot.

The parties are **ORDERED** to file a joint status report **on or before February 25, 2025**, indicating whether these motions still present a disputed issue. If the parties are unable to agree on a joint statement, they may offer their respective positions separately.

**IT IS SO ORDERED.**

DATED: February 18, 2025

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**